## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARY A. KNECHT,                    :
                                   :
            Plaintiff,             :        No. 3:19-cv-000759
                                   :
      v.                           :        (SAPORITO, M.J.)
                                   :
ANDREW SAUL,[1]                    :
Commissioner of                    :
Social Security,                   :
                                   :
            Defendant.             :

## MEMORANDUM

This is an action brought under 42 U.S.C. §405(g), seeking judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying Mary A. Knecht's ("Knecht") claim for disability insurance benefits under Title II of the Social Security Act. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c) and

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019. He is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d); *see also* Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g)(action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The caption in this case is amended to reflect this change.

Rule 73 of the Federal Rules of Civil Procedure. (Doc. 9, Doc. 10, Doc. 14). For the reasons stated herein, we will AFFIRM decision of the Commissioner.

## I.    *Background and Procedural History*

Knecht is an adult individual born October 12, 1975, who was 41 years old at the time of her alleged onset date of disability—March 17, 2017. (Tr. 100). Knecht's age at the onset date makes her a "younger person" under the Social Security Act. *See* 20 C.F.R. § 404.1563(c). Knecht completed her GED in 2006. (Tr. 68). Prior to her alleged onset date, Knecht worked as a caregiver, frame cleaner, cashier, waitress, spreader, and packer/stacker. (Tr. 212). Knecht also worked full-time during the relevant period as a caretaker and a shipping packer, which the Administrative Law Judge ("ALJ") found to be substantial gainful activity. (Tr. 26, 74-75).

On April 10, 2017, Knecht protectively filed for disability benefits pursuant to Title II of the Social Security Act. (Tr. 23). In her application, Knecht alleged that she became disabled beginning March 17, 2017, as a result of a torn rotator cuff, herniated disk, bulging disk in back and neck, disk deteriorating disease, anxiety, and right shoulder tendonitis. (Tr. 23,

178). Knecht's claim was initially denied on August 4, 2017. (Tr. 23). Thereafter, Knecht filed a timely request for an administrative hearing on September 17, 2017, and it was granted. (*Id.*). Knecht appeared and testified before ALJ, Charles A. Dominick, on September 12, 2018, in Wilkes Barre, Pennsylvania. (Tr. 23, 58). Although informed of the right to representation, Knecht chose to appear and testify without the assistance of an attorney or other representative. (Tr. 23). In addition, an impartial vocational expert ("VE"), Nadine Henzes, and a family friend, Katie Lindsey, also appeared and testified during the administrative hearing. (Tr. 58). At the time of the hearing, Knecht was 42 years old and resided with her husband and children in Wilkes-Barre, Pennsylvania, which is in the Middle District of Pennsylvania. (Tr. 59).

In a written decision dated November 21, 2018, the ALJ denied Knecht's application for benefits. (Tr. 20). Knecht sought further review of her claims by the Appeals Council of the Office of Disability Adjudication and Review, but her request was denied for review on February 27, 2019. (Tr. 1). Knecht subsequently filed an appeal to the U.S. District Court for the Middle District of Pennsylvania on May 3, 2019, arguing that the ALJ's decision was not supported by substantial

evidence. (Doc. 1). On July 25, 2019, the Commissioner filed his answer, in which he maintains that the ALJ's decision was correct and in accordance with the law and regulations. (Doc. 7, at 2). This matter has been fully briefed by the parties and is ripe for decision. (Doc. 13; Doc. 15).

On this score, Knecht's treatment history discloses that Knecht has right shoulder tendonitis and a partial rotator cuff due to a work-related injury sustained in September 2016. (Tr. 32). An MRI scan of Knecht's right shoulder in September 2016, showed a tear of the supraspinatus tendon, mild to moderate tendinopathy, mild subscapularis, and mild acromioclavicular degenerative changes with reactive edema. (*Id*.). Additionally, an MRI of Knecht's spine in September 2016, demonstrated loss of normal cervical lordosis thought to be resulting from muscle spasm and posterior disc desiccation with bulging at C5-6 and C6-7 without any substantial foraminal or canal stenosis, and no significant osseous abnormality. (*Id*.). Knecht was treated with physical therapy, and the treatment notes demonstrate that she experienced some improvements. (*Id*.). Knecht returned to work with modified activities until February 2017, when she stopped working due to bronchitis and she was later

terminated. (*Id*.).

In April 2017, Knecht visited Geisinger Medical Center concerning ongoing right shoulder pain with limited range of motion and difficulties in completing her activities of daily living, such as housework, dressing, and grooming. (Tr. 427). An x-ray of Knecht's right shoulder, however, revealed only minor right shoulder degenerative changes, and no fracture was noted. (*Id*.). Other clinical findings noted that Knecht had mild tenderness to palpation, but when she was distracted or talking, she was moving and ranging her right shoulder without difficulty. (Tr. 33).

In July 2017, Knecht's physical condition was examined by Dr. Angelo Anzalone ("Dr. Anzalone"), State agency medical consultant. (Tr. 468-73). Dr. Anzalone opined that Knecht was capable of lifting and carrying up to 20 pounds frequently and 100 pounds occasionally. (Tr. 468). Dr. Anzalone also opined that Knecht could sit, stand, and walk for up to five hours at one time and seven hours in an eight-hour workweek, and that Knecht did not need an assistive device to effectively ambulate. (Tr. 469). Dr. Anzalone opined that Knecht had frequent use of her upper extremities, except with occasional limitations in reaching overhead with her upper right extremity. (Tr. 470). In August 2017, Knecht was also

examined by State agency medical consultant, Dr. John Simmons ("Dr. Simmons"). (Tr. 107-110). Dr. Simmons opined that Knecht was capable of performing light work, except with some postural activity limitations and limited overhead reaching with her right upper extremity. (Tr. 108-09).

With regard to Knecht's allegations of back pain and its associated limitations, Knecht complained of constant, sharp pain in her back and neck that radiated from her back down to her shoulders and legs. (Tr. 33). The objective medical evidence, however, revealed limited abnormal findings. For example, in January 2018, Knecht underwent an x-ray, which showed degenerative changes of her lower spine. (*Id.*). Additionally, clinical findings of Knecht's lower back demonstrated some tenderness to palpation. (*Id.*). However, further examinations revealed otherwise normal findings, including a negative straight leg raise and her gait, range of motion, and strength were noted as normal. (*Id.*).

As for Knecht's knee pain, the medical record illustrates that Knecht had a longstanding history with pain in her bilateral knees "on and off" since she was 12 years old. (Tr. 33-34). Clinical findings of Knecht's bilateral knees, however, demonstrated some tenderness and

crepitance, but other clinical findings of her extremities showed no joint deformities and 5/5 strength in her lower extremities. (Tr. 34). Additionally, the medical record reflected that Knecht exhibited a normal gait and reported no falls or unusual bending or liftings, and an April 2016 x-ray was negative. (*Id.*).

At her administrative hearing in September 2018, Knecht provided the ALJ with an opinion dated August 7, 2018, prepared by Wanda Alexander from Hudson's Bay Company. (Tr. 609). The Hudson's Bay Company opined that Knecht could return to work with the following restrictions: no lifting more than ten pounds from the floor to the waist; no lifting more than five pounds from the waist to the shoulders; no prolonged walking, climbing of ladders, overhead work, forceful pushing or pulling, bending or stooping, kneeling or squatting, or work at heights, driving, or using hazardous machinery. (*Id.*).

As for her mental health impairments, Knecht complained of having anxiety with symptoms, such as excessive worry, hypervigilance, poor sleep, and anxiety attacks that included feeling shortness of breath, chest pain, and antsy. (Tr. 34). Knecht also complained of depressive symptoms, such as occasional crying spells, helplessness, low of interest,

irritability, diminished self-esteem, and social withdrawal, and having periods of feeling mania with symptoms, such as inflated self-esteem and grandiosity. (*Id.*). Upon mental status examinations, however, Knecht was cooperative with overall adequate social skills and interactions, appropriately dressed and well-groomed, had coherent and goal directed thought process without evidence of hallucinations, delusions, or paranoia, an euthymic mood, intact attention and concentration with mildly impaired memory. (*Id.*).

In July 2017, Knecht was examined by Dr. Charles Lajeunesse ("Dr. Lajeunesse"), State agency consultant and psychologist. (Tr. 454-456). Dr. Lajeunesse opined that Knecht had no limitations in understanding, remembering, or carrying out simple instructions with moderate limitations in understanding, remembering, and carrying out complex instructions. (Tr. 454). Dr. Lajeunesse also opined that Knecht had marked limitations in her ability to interact with others. (Tr. 455). In August 2017, Knecht was examined by Dr. Timothy Ostrich ("Dr. Ostrich"), a State agency mental health consultant. (Tr. 110-112). Dr. Ostrich opined that Knecht could understand, remember, and carry out short and simple instructions with moderate limitations in interacting

with others. (Tr. 111-112).

## II.   *Legal Standards*

When reviewing the denial of disability benefits, the Court's review is limited to determining whether those findings are supported by substantial evidence in the administrative record. *See* 42 U.S.C. § 405(g) (sentence five); *Id.* § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being

supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

To receive disability benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Id.* § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a); *Id.* § 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment[2] that makes it impossible to do his or her previous work or any other substantial gainful activity[3] that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); *Id.* § 1382c(a)(3)(B); 20 C.F.R. § 404.1505(a); *Id.* § 416.905(a).

The Commissioner follows a five-step sequential evaluation process in determining whether a claimant is disabled under the Social Security Act. 20 C.F.R. § 404.1520(a); *Id.* § 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or

---

[2] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); *Id.* § 1382c(a)(3)(D).

[3] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510; *id.* § 416.910.

equals a listed impairment;[4] (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC");[5] and (5) whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. *Id.* § 404.1520(a); *Id.* § 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 42 U.S.C. § 423(d)(5); *Id.* § 1382c(a)(3)(H)(i); 20 C.F.R. § 404.1512; *Id.* § 416.912; *Mason*, 994 F.2d at 1064. Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f); *Id.*

---

[4] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.

[5] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (e.g., pain). 20 C.F.R. § 404.1545(a)(1); *id.* § 416.945(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe. *Id.* § 404.1545(a)(2); *id.* § 416.945(a)(2).

§ 416.912(f); *Mason*, 994 F.2d at 1064.

## III. Discussion

In his November 21, 2018, decision denying Knecht's claim for benefits, the ALJ evaluated Knecht's application for benefits at each step of the sequential process. In that decision, the ALJ first concluded that Knecht met the insured status requirements of the Social Security Act through September 30, 2022. (Tr. 25). At step one, however, the ALJ concluded that Knecht had engaged in substantial gainful activity from May 2018 through the hearing date—September 12, 2018. (Tr. 26). The ALJ explained that Knecht testified that she started working for Saks Fifth Avenue in May 2018, and she was working full-time at 40 hours a week for $11.75 an hour. (*Id*.). Thus, with respect to this period, Knecht's application was denied because she had engaged in substantial gainful activity. (*Id*.). The ALJ also concluded, however, that there was a continuous 12-month period during which she did not engage in substantial gainful activity. (*Id*.). Thus, the ALJ proceeded to step two of the sequential evaluation process. (*Id*.).

At step two, the ALJ found that the following impairments were medically determinable and severe during the relevant period: tendinitis

status post rotator cuff tear of the right shoulder, degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, neuropathy, bipolar disorder, panic disorder, generalized anxiety disorder, and agoraphobia. (Tr. 26).

At step three, the ALJ found that Knecht did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, during the relevant period. (Tr. 27-31). Between steps three and four, the ALJ fashioned an RFC considering Knecht's limitations from her impairments:

> After careful consideration of the entire record, the undersigned finds that [Knecht] has the [RFC] to perform light work as defined in 20 C.F.R. 404.1567(b), except that [Knecht] is limited to no more than frequent balancing, stooping, kneeling, crouching, and climbing on ramps and stairs, but never crawling and never climbing on ladders, ropes or scaffolds. [Knecht] must avoid unprotected heights and dangerous moving machinery, must avoid overhead reaching with the bilateral upper extremities, is limited to no more than frequent reaching in all other directions with the bilateral upper extremities, must avoid exposure to extreme temperatures, extreme humidity, wetness, or vibration, is limited to simple routine tasks, but not at a production rate pace. [Knecht] is limited to occupations requiring no more than simple work-related decisions with no more than occasional changes in the work setting. [Knecht] is limited to occasional interaction with supervisors, coworkers, and the public. [Knecht] must be given the opportunity to alternate

between sitting and standing at least every 30 minutes.
(Tr. 31).

At step four, the ALJ found that Knecht was unable to perform any past relevant work. (Tr. 37). At step five, the ALJ determined that based on Knecht's age, education, work experience, and RFC that there were a significant number of jobs in the national economy that Knecht could perform, including working as a tagger, folder, and office helper. (Tr. 38-39).

Knecht contends that the decision of the ALJ is not supported by substantial evidence of record and raises two issues on appeal attacking various aspects of the ALJ's decision. We shall address each argument seriatim.

## A. *The ALJ Did Not Err in His Consideration of the VE's Testimony*

Knecht's first claim of error, challenges the ALJ's consideration of the VE's testimony. (Doc. 13, at 1). Specifically, Knecht argues that the ALJ failed to consider the VE's opinion testimony with regard to the second hypothetical that with her functional limitations there were no jobs that she could perform. (*Id.*).

In response, the Commissioner contends that Knecht is mistaken

in her argument that the ALJ did not properly consider the VE's testimony. (Doc. 15, at 21). To the contrary, the Commissioner asserts that the ALJ presented the VE with an accurate hypothetical question that accounted for all of Knecht's functional limitations, as included in the RFC assessment. (*Id.*). Thereafter, the ALJ relied on the VE's testimony in determining that there were a significant number of jobs that Knecht could perform within the national economy. (*Id.*).

The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations. *Chandler*, 667 F.3d at 361. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."' *Burnett*, 220 F.3d at 121 (3d Dept 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359(3d Cir. 1999)). It reflects the most that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184 at *2. In assessing the RFC, the ALJ must consider all the evidence of the record and, regardless of its source, "evaluate every medical opinion . . . receive[d]." *Burnett*, 220 F.3d at 121 (internal citations omitted). The Court's "review of the ALJ's

assessment of the [claimant]'s RFC is deferential," and the "RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018); see also *Martin v. Comm'r of Soc. Sec.*, 547 F. App'x 153, 160 (3d Cir. 2013) ("We examine the ALJ's conclusions as to a claimant's RFC with the deference required of the substantial evidence standard of review." (internal quotation marks omitted)).

At step five of the sequential evaluation process, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work by posing a hypothetical question(s) to the vocational expert. *Chrupcala v. Heckler*, 829 F.2d 1269, 176 (3d Cir. 1987); *see also Rutherford*, 399 F.3d at 554; *Ramirez*, 372 F.3d at 552-55; *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). The Court of Appeals has made clear, "[a] hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Ramirez*, 372 F.3d at 552-55 (quoting *Podedworny*, 745 F.2d at 210 and *Wallace v. Secretary*, 722 F.2d 1150 (3d Cir. 1983)). The ALJ, however, is not required to

submit to the vocational expert every impairment alleged by a claimant. *Rutherford*, 399 F.3d at 554. As correctly asserted by the Commissioner, the ALJ is only required to convey to the vocational expert all of a claimant's credibly established limitations. (*Id.*).

Applying the above standard, the Court is not persuaded by Knecht's argument as to this issue. Here, Knecht argues that the ALJ failed to consider the testimony of the vocational expert who stated that "with [Knecht's] limitations there would be no job(s) that she could perform . . .." (Doc. 13, at 1). This response was solicited based upon the additional limitations included in the second hypothetical question. (*See Admin. Tr.* 94-99). Thus, Knecht argues that the ALJ should have relied on the second hypothetical question. We disagree. As correctly stated by the Commissioner, the ALJ need only accept those limitations that are "credibly established." Knecht contends that the vocational expert supports her argument that there are no jobs that she can perform with her functional limitations. However, Knecht fails to explain what functional limitations would result in a finding that there are no jobs that she can perform and why the ALJ erred in relying on the second hypothetical question. Additionally, Knecht fails to cite to any medical

evidence to support her contentions on this matter. Further, even assuming that the ALJ committed error in relying on the second hypothetical question, Knecht does not challenge the ALJ's step one finding that from May 2018 through the hearing date—September 12, 2018, she engaged in substantial gainful activity. (*See Admin Tr.* 26). Therefore, Knecht's contentions on this score are unavailing. Thus, finding that Knecht had failed to carry her burden of proving error, the Court finds no basis for disturbing the ALJ's determination as to this issue.

### B. The ALJ Did Not Err in Weighing the Opinion Evidence of Record

Knecht's last claim of error challenges the ALJ's consideration of the opinion evidence of record. (Doc. 13, at 1). Specifically, Knecht argues:

> It appears evident that the [ALJ] totally ignored all evidence presented in a favorable light in my case . . .. [The ALJ] did not want to accept the opinion of the mental professional doctor who saw me for Social Security saying he only saw me once, however, he had no problem accepting the opinion of the physical doctor who saw me for Social Security on the same day who I spent less time with. [The ALJ] overlooked my family doctor's restrictions because they were sent by a lady from the HR dep[artment] of my job, saying she was not a license[d] doctor. [The ALJ] confused this matter and assumed that the lady who was forwarding said restrictions

claim[ed] to be the doctor. Since this time [,] my conditions
have grown worse, [I] will be reapplying for my benefits for
disability, and I will continue to reapply until I receive my
benefits.

(Doc. 13, at 1).

In response, the Commissioner argues that the ALJ adequately
explained the legal and factual basis concerning the opinions of Dr.
Anzalone, Dr. Lajeunesse, and Ms. Wanda Alexander. (Doc. 15, at 25-28).
Therefore, substantial evidence supports the ALJ's evaluation of the
opinion evidence. (*Id.*).

It is clear beyond peradventure that the ALJ—not treating or
examining physicians or State agency consultants—must make the
ultimate disability and RFC determinations. *Chandler*, 667 F.3d at 361.
While the ALJ must articulate his or her consideration of all medical
opinions, the ALJ must consider the persuasiveness of the medical
opinion(s) or prior administrative medical finding(s) using the five factors
set forth under 20 C.F.R. § 404.1520c, including supportability,
consistency, treatment relationship, specialization, and other factors that
tend to support or contradict a medical opinion or prior administrative
medical finding. (*Id.*).

Supportability and consistency are the most important factors in

determining the persuasiveness of a medical source's medical opinion. 20 C.F.R. § 404.1520c(b)(2). The ALJ must explain in his or her decision how persuasive he or she finds a medical opinion based on these two factors. 20 C.F.R. § 404.1520c(c)(1)-(5). The ALJ may, but is not required, to explain how he considered the other remaining factors, unless the ALJ finds that two or more medical opinions about the same issues are both equally well-supported and consistent with the record, but not identical. 20 C.F.R. § 404.1520c(b)(3). Lastly, the ALJ may choose which medical evidence to credit and which to reject as long as there is a rational basis for the decision. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).

Contrary to Knecht's contentions, the Court finds that substantial evidence supports the ALJ's consideration of the opinion evidence of record. In this case, the ALJ analyzed the opinions of the medical sources involved in this case. The ALJ considered the opinion of Dr. Anzalone, State agency consultant, and concluded that his opinion was persuasive. (Tr. 35-36). The ALJ reasoned that Dr. Anzalone's opinion was well supported by the record as a whole. (Tr. 35). For example, Knecht reported no falls and generally walked with a normal gait. (*Id.*). The ALJ, however, found that Dr. Anzalone's opinion concerning Knecht's right

upper extremity was somewhat an overestimation of Knecht's abilities since she continued to complain of pain based on updated treatment notes after his consultative examination. (Tr. 35-36). Nevertheless, the ALJ was persuaded by Dr. Anzalone's opinion.

The ALJ considered the opinion of Dr. LaJeunesse, State agency consultant, and was not persuaded by his opinion. (Tr. 36). The ALJ reasoned that Dr. LaJeunesse did not have a longstanding treating relationship with Knecht and only examined Knecht on one occasion. (*Id.*). The ALJ further explained that Dr. LaJeunesse's assessment, specifically the marked social interaction limitations, concerning Knecht's impairments were not supported by Dr. LaJeunesse's own clinical findings. (*Id.*). For example, upon mental status examinations, Knecht was cooperative with appropriate eye contact and social interactions. (*Id.*). Additionally, the ALJ concluded that Dr. LaJeunesse's opinion was not consistent with the record as a whole, including Knecht's daily activities, Knecht reported that she was able to go grocery shopping and spent time with others on a regular basis. (*Id.*). Thus, the ALJ was not persuaded by Dr. LaJeunesse's opinion.

The ALJ considered the opinion of Dr. Ostrich and found his opinion

persuasive. (*Id.*). The ALJ reasoned that Dr. Ostrich's opinion was supported by a detailed explanation and was consistent with the record as a whole. (*Id.*). For example, the ALJ found that the clinical findings demonstrated that Knecht's attention and concentration were intact. (*Id.*). Moreover, Knecht testified that she returned to full-time work, and reported, at times, being able to follow instructions and complete her daily activities, such as laundry. (*Id.*). Thus, the ALJ was persuaded by Dr. Ostrich's opinion.

The ALJ considered the opinion of Dr. Simmons and found his opinion persuasive. (*Id.*). The ALJ reasoned that Dr. Simmons' opinion was supported by a detailed explanation and was consistent with the record as a whole. (*Id.*). For example, clinical findings demonstrated a negative straight leg raise bilaterally in the seated and supine positions, and that Knecht had a 5/5 strength in her upper and lower extremities. (*Id.*). Moreover, Knecht testified that she returned to full-time work. (*Id.*). Thus, the ALJ was persuaded by Dr. Simmons' opinion.

Lastly, the ALJ considered the opinion dated August 7, 2018, prepared by Wanda Alexander from Hudson's Bay Company and found this opinion unpersuasive. (Tr. 36-37). The ALJ reasoned that Wanda

Alexander's title, relationship, and familiarity with Knecht's medical condition was unknown, and without her title, it was unknown if she was a doctor and had additional training and schooling to opine about Knecht's medical conditions. (Tr. 36-37). Additionally, the ALJ concluded that the opinion was based on a checklist form, and it lacked any supporting evidence, such as an explanation for the findings or references of diagnostic studies and clinical findings. (Tr. 37). The ALJ further concluded that the opinion was inconsistent with the record as a whole. (*Id*.). For example, the record lacked evidence to support a restriction of no lifting of more than five pounds from the waist to shoulder, and clinical findings of her upper extremities demonstrated 5/5 strength, including grip strength. (*Id*.). Thus, the ALJ found the opinion prepared by Wanda Alexander unpersuasive.

In sum, the ALJ was confronted by a record marked by contrasting medical opinions and inconsistencies in Knecht's abilities and limitations. In reconciling the discordant and conflicting threads of this evidence, the ALJ concluded that Dr. Anzalone's opinion was persuasive, Dr. LaJeunesse's opinion was not persuasive, Dr. Ostrich's opinion was persuasive, Dr. Simmons' opinion was persuasive, and that the opinion

prepared by Wanda Alexander was not persuasive. (Tr. 35-37). It is the right and responsibility of the ALJ to make such assessments and we find that substantial evidence supported the ALJ's decision. It appears that Knecht is requesting that this Court re-weigh the evidence. This we may not do. *See*, *Rutherford*, 399 F.3d at 552 ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute our own conclusions for those of the fact-finder.'" (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992))). Because we cannot re-weigh the evidence, we find the ALJ has not erred in weighing the opinion evidence of record.

An appropriate Order follows.


Dated: August 6, 2020                    ***s/Joseph F. Saporito, Jr.***
                                         JOSEPH F. SAPORITO, JR.
                                         United States Magistrate Judge